**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**UNITED STATES OF AMERICA**

**VS.**                                   **No. 4:23−cr−00276-04-BSM**

**MARCUS CHRISTOPHER HARGROVE**

**<u>DETENTION ORDER</u>**

Yesterday, May 22, 2024, Defendant Marcus Hargrove appeared with his appointed attorney, Geoffrey Kearney, for a bond hearing. The Government was represented by Assistant United States Attorney Anne Gardner. For reasons stated on the record at the conclusion of the hearing and in this Order, the Court finds that Mr. Hargrove must be detained pending resolution of the pending federal charge.

In making my findings, I relied on the Pretrial Services Report and Addendum,[1] the testimony of Ms. Williams-Kellum, who is Mr. Hargroves' mother, and the arguments of counsel.

**I.      Circumstances of Offense Conduct and Arrest**

Mr. Hargrove is charged in this case with conspiracy to possess with intent to distribute and distributing controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and two counts of conspiracy to commit pharmacy

---

[1] Through counsel, Mr. Hargrove indicated that he does not contest the accuracy of the information contained in the Pretrial Services Report and Addendum.

burglary, in violation of 18 U.S.C. § 2118(d). *Doc. 3*. The drug-related offense triggers a presumption of detention.[2] If convicted, Mr. Hargrove faces a maximum statutory sentence of twenty years' imprisonment.

## II.   Criminal History

Mr. Hargrove's criminal history started early and has continued until his latest arrest.  Now 31 years old, Mr. Hargrove was arrested and convicted of misdemeanor criminal trespass at age 14 and misdemeanor theft of property at age 15. At age 21, he was convicted of his first felony – a drug offense.  Even though he has only three felony convictions, he has five misdemeanor convictions and numerous other arrests.

In 2016, Mr. Hargrove was convicted of burglary involving controlled substances in the Southern District of Texas and sentenced to 30 months' incarceration. While on supervised release in that case, Mr. Hargrove left the district without permission and was arrested for another felony offense. As a result, his federal supervision was revoked.

Less than a year after serving the eight-month revocation sentence, Mr. Hargrove allegedly entered into the conspiracy in this case, which involves similar conduct to the 2016 federal conviction. Additionally, six months before this indictment was filed, Mr. Hargrove was charged with resisting arrest after fleeing from police. Upon his arrest, officers discovered that Mr. Hargrove had three

---

[2] 18 U.S.C. § 3142(e)(3)(A).

outstanding warrants. Mr. Hargrove also has three other arrests for "evading arrest detention" or resisting arrest. Two of these arrests resulted in misdemeanor convictions.

## III.  Release Plan

Mr. Hargrove proposed that he be released to live in Humble, Texas with his mother, Rachel Williams-Kellum, who agreed to act as his third-party custodian. Ms. Williams-Kellum testified that her son has lived with her his entire life.[3]

## IV.  Discussion

After Mr. Hargrove rested, the Court determined that the presumption had been rebutted, leaving it as one factor to consider in the detention calculus.

Mr. Hargrove's extensive criminal history weighs strongly in favor of detention. While I recognize that the nature of his past criminal conduct is not particularly violent, the repetitive nature of crimes involving theft, burglary, and drugs is troubling, as is the fact that the pending federal charge involves similar conduct as his first federal conviction. And stealing narcotic drugs from pharmacies, the subject of the prior federal conviction and the pending federal charge, poses a

---

[3] Mr. Hargrove's release plan, which did not mention his employment, may have been stronger if it had addressed what Mr. Hargrove would be doing while living with his mother. Mr. Hargrove has been unemployed for over a year, but he has past work experience as a self-employed barber. I do not hold this lack of evidence against Mr. Hargrove, as I recognize that I can impose employment as a condition of release.

significant risk of community harm. In addition, the prosecution described the pending charge as part of a nationwide crime spree.[4]

Mr. Hargrove's proposed residence in Texas is the same place he was living when he allegedly engaged in the charged conduct in this case, as well as all the other criminal conduct described in the pretrial report. Ms. Williams-Kellum no doubt loves her son and would do her best to fulfill her obligations as a third-party custodian. However, there is nothing in the record to suggest that the proposed release plan would prevent Mr. Hargrove from continuing to engage in criminal conduct or ensure his court appearances in Arkansas.

At the conclusion of the hearing, after I announced my detention decision, Mr. Kearney proposed as an alternative plan that Mr. Hargrove be permitted to go to inpatient treatment. My impression is that while Mr. Hargrove may prefer inpatient treatment to jail, he is not serious about drug treatment. As a result, the Court cannot justify spending taxpayer resources to send him to inpatient treatment.[5]

---

[4] During the pretrial interview, Mr. Hargrove denied ever living in another state. However, Georgia and Florida both reported him as having identification cards. This suggests, at best, a lack of candor with the interviewing pretrial services officer and, at worst, is consistent with a presence in other states for nefarious purposes.

[5] Mr. Hargrove's interview with pretrial services suggests a history of marijuana and opioid use that, even with his recent abstinence based on incarceration, make him a candidate for drug treatment. Had I released him on bond, I would have ordered an assessment to determine whether he would benefit from inpatient substance use disorder treatment.

One of the most important pretrial release conditions – and one of the few mandatory conditions – instructs defendants that they must "not commit a Federal, State, or local crime during the period of release."[6] Based on Mr. Hargrove's past conduct, there is no basis for me to conclude that he can be trusted to abide by this fundamental release condition.

## V.      Conclusion

After carefully considering all factors listed under 18 U.S.C. § 3142(g),[7] I find that the Government has proved (1) by clear and convincing evidence that Mr. Hargrove poses a danger to others and to the community; and (2) by a preponderance of the evidence that Mr. Hargrove poses a risk of non-appearance. I further find that if Mr. Hargrove were released, there is no condition nor any combination of conditions I could impose that would reasonably assure community safety and his appearance at future proceedings.

IT IS THEREFORE ORDERED that Defendant is committed to the custody of the United States Marshal or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or

---

[6] 18 U.S.C. § 3142(c)(1)(A).

[7] Section 3142(g) factors include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)-(4).

serving sentences or held in custody pending appeal. He must be afforded a reasonable opportunity to consult privately with defense counsel. On order of a United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver him to the United States Marshal for a court appearance.

So Ordered 23 May 2024.

_____
UNITED STATES MAGISTRATE JUDGE